**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-21964-Civ-BECERRA/TORRES

SEDAT CETINDAG,

      *Plaintiff,*

v.

THOMAS P. MURPHY, JR; ENGIN
YESIL; RENCO WORLD CORPORATION;
RENCO USA, INC. and COASTAL
CONSTRUCTION GROUP OF SOUTH
FLORIDA, INC.,

      *Defendants.*

_____/

### *ORDER ON PLAINTIFF'S MOTION TO REMAND*

This matter is before the Court on Plaintiff's Motion to Remand. [D.E. 8]. Defendants Thomas P. Murphy ("Murphy"), Jr., Renco USA, Inc. ("Renco USA"), and Coastal Construction Group of South Florida, Inc. (collectively, the "Removing Defendants") timely filed their response in opposition, [D.E. 20], and the Plaintiff replied, [D.E. 21].

The crux of the issue raised in the Motion is whether a minority shareholder's state-law claims for fraudulent concealment, conspiracy, and breach of fiduciary duty "arise under" federal patent law because the assets at the center of the alleged scheme are patents. Based on this record the claims within the Complaint do not arise under

1

patent law. Therefore, Plaintiff's Motion is granted and the case shall be remanded back to state court.[1]

### I.   BACKGROUND

In 2010, Plaintiff Cetindag and Defendant Yesil began a business relationship after Yesil learned that Cetindag discovered and patented an innovative composite wall brick and building system in Turkey. [D.E. 8 at ¶¶ 9–12]. The same year, Cetindag and Yesil founded a business, Renco Kompozite ("Kompozite"), in Turkey; and, with a few leads in Florida, they decided to try their luck in the United States. [*Id.* at ¶ 12]. The two entered an agreement that assigned Cetindag 40% and Yesil 60% ownership in Kompozite. [*Id.* at 13]. Yesil's role included the financial support, marketing, manufacturing, and distribution aspects of Kompozite. [*Id.*].

At some point, Cetindag and Yesil acquainted with Thomas P. Murphy, and the three began a business relationship. Cetindag and Yesil eventually came to Florida, where they developed a business with Murphy. In 2011, the three formed Renco World, a Florida company. They divided ownership stakes in Renco World as follows: 10% held by Murphy, 40% held by Cetindag, and 50% held by Yesil. [*Id.* ¶ 17]. In February 2012, Cetindag and Yesil entered into a Contribution Agreement. [*Id.* at ¶ 19]. Cetindag also assigned all ownership rights of his inventions, including all patent rights related to the composite brick and building system to Renco World. [*Id.* ¶ 20]. From then on, Renco World, *not* Cetindag, held an interest in the patents.

---

[1] On April 15, 2026, the Honorable Jacqueline Becerra referred the Motion to the Undersigned Magistrate Judge to take all necessary and proper action. [D.E. 9].

Between 2012 and 2013, Renco World underwent necessary technical tests on the composite brick and established a manufacturing process in the United States. [*Id.* at ¶ 21]. In 2013, Yesil allegedly told Cetindag that the project was rejected and a failure. [*Id.* at ¶ 22]. Cetindag pleads Murphy also told him the project was a failure and that the brick failed to pass inspection in the United States. *Id.* at ¶ 23. Cetindag, living in Turkey, took Yesil and Murphy's word as truth, and understood that Renco World was dead. However, Renco World actually obtained a Turkish patent as well as patents issued by the U.S. Patent & Trademark Office ("USPTO"), U.S. Patent Nos. D677,800 ("the '800 patent") on March 12, 2013, and 9,010,052  ("the '052 patent") on April 21, 2015.[2] *Id.* at ¶ 30–31. Both the '800 and '052 patents, which were obtained through Renco World's applications, recognize Cetindag as the Inventor.

Yet Cetindag claims he was not aware that the USPTO had issued the patents or that they were used until 2024, when a businessman in Kentucky contacted him to inquire about the technology. *Id.* ¶ 25. Cetindag pleads that the Kentucky businessman told him how the material had been a success, but that another company, Renco USA, was using or marketing the products. *Id.* at ¶ 26.

---

[2] While Plaintiff pleads that '800 patent was a Renco World patent, the attachments he provided alongside the Complaint list Kompozite as the Assignee. However, a public search on the database lists Sedat Cetindag as the Inventor and Renco World as the Assignee of another patent, Patent No.: US-20150107176-A1: https://ppubs.uspto.gov/api/pdf/downloadPdf/US-20150107176-A1?source=US-PGPUB&requestToken=eyJzdWIiOiI4MGE5NzNlYS1lNWNhLTQzY2ItYjQyMC01MzYxMGM0YTI4ZWUiLCJ2ZXIiOiIzY2MzNDc0ZS1lNzRmLTQwNDItYWRiYS1jZGM4MWNkOWVkMjIiLCJleHAiOjB9.

After conducting further research, Cetindag learned that Renco USA and Coastal Construction Group of South Florida, Inc. ("Coastal"), both companies owned by Yesil and Murphy, use or sell the technology. *Id.* at ¶ 26. Cetindag further pleads that both Renco World and Renco USA describe owning and inventing the patented technology on their respective websites. *Id.* at ¶¶ 34–39. Cetindag does not have an ownership stake in Renco USA or Coastal. *Id.* at ¶¶ 25, 56.

Based on these discoveries, Cetindag now alleges that the Defendants entered into a conspiracy to fraudulently conceal information about Renco World activities (particularly the patent's approval, use and subsequent transfer to Renco USA and Coastal) to prevent Cetindag from sharing in any profits he would be entitled to as a 40% shareholder in Renco World. *Id.* at ¶ 36–38. He alleges in his complaint that Defendants have made millions of dollars and are set to make many more. *Id.* at 41. He pleads that Renco World transferred all its rights to use the patents to Renco USA and Coastal under his nose and that he has received no compensation for the products that benefitted from his inventions. *Id.* at ¶ 49.

To pursue his claims Cetindag filed a complaint in Miami-Dade County, Florida including two fraudulent concealment claims, one against Murphy and another against Yesil; a conspiracy claim against all defendants; and a claim for breach of fiduciary duty. *Id.* at ¶¶ 45–74. Defendants timely removed the case to this District, following which Cetindag moved to remand the action back to state court. Defendants maintain that his claims are misguided because Renco USA is not practicing the patents that Renco World obtained through Cetindag, so Renco World

4

does not owe any money to Cetindag. So every cause of action stated in the complaint requires a determination, say Defendants, as to whether Renco USA is actually practicing the patented technology. Remand is appropriate, therefore, because the current claims "involve patent law" and require resolution of fundamental patent questions.

All parties agree that federal jurisdiction in this case depends on whether the case "arises under" federal law, specifically federal patent law. We find, however, that Defendants' case for removal lacks merit. Defendants cannot meet the burden they have of establishing federal question jurisdiction because this case is primarily concerned with state tort law and federal questions of patent law do not need to be decided to adjudicate the claims. Remand is required.

## II.    ANALYSIS

### A. *Applicable Standard*

Federal courts are courts of limited jurisdiction, meaning they only have the power to provide a forum for some, not all, disputes. *See Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1260–61 (11th Cir. 2000); *see U.S. Bank, Nat'l Ass'n as Tr. for Truman 2016 SC6 Title Tr. v. Taveras*, No. 23-13384, 2025 WL 1355512 (11th Cir. May 9, 2025) ("Federal district courts are courts of limited jurisdiction, and only civil actions over which the district courts have original jurisdiction may be removed from state to federal court."). "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or

(3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.,* 849 F.3d 1313, 1317 (11th Cir. 2017) (citations and internal quotations omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.,* 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Beavers v. A.O. Smith Elec. Prods. Co.,* 265 F. App'x 772, 777 (11th Cir. 2008) (citations omitted). Alternatively, the action can be remanded back to state court under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction after having been removed to federal court under section 1441.

"The plaintiff is the master of his complaint and is [generally] free to choose federal or state jurisdiction." *Morock v. Chautauqua Airlines, Inc.,* No. 8:07-CV-00210-T17MAP, 2007 WL 1725232, at *1 (M.D. Fla. June 14, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)). However, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If a defendant decides to do so, the defendant bears the burden of putting forth sufficient facts supporting the existence of federal jurisdiction. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party shoulders

6

the burden of establishing federal subject matter jurisdiction."); *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998).  A federal court must determine whether it has subject matter jurisdiction at the time a removal notice is filed. *See Poore v. American-Amicable Life Ins. Co.,* 218 F.3d 1287, 1290-91 (11th Cir. 2000). And because removal implicates significant federalism concerns, courts must strictly construe removal statutes. *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand to state court.").

Here, the parties disagree over whether the complaint arises under patent law. [D.E. 8]; [D.E. 20]. District courts have original jurisdiction over "any civil action arising under any Act of Congress relating to patents[.]" 28 U.S.C. § 1338. Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, a claim "arises under" federal law when a federal law creates the cause of action. *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir. 1996).[3] That is true with one exception: where, as here, the complaint only raises a state law claim, "federal jurisdiction will lie if those claims

---

[3] Federal causes of action may be either express or implied. *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 958 (7th Cir. 2021) (citing *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 90 (1981)). Express causes of action constitute those developed by a federal statute. *Id.* at 959. The implied causes of actions constitute those in which the cause of action derives from judicial interpretation of congressional intent, such as an action against a federal officer or a private action for securities fraud under the Securities Exchange Act of 1934. *Id.* (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).

7

implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005); *see E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.,* 3 F.4th 954, 959 (7th Cir. 2021) (describing the same principle); *see also Gaming Corp. of Am. v. Dorsey & Whitney,* 88 F.3d 536 (8th Cir. 1996) ("A district court has no discretion to remand a claim that states a federal question" (citing *In re City of Mobile,* 75 F.3d 605, 607 (11th Cir. 1996))).

Federal jurisdiction under this limited theory exists in only a "special and small category" of cases. *Empire HealthChoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006). To determine whether such jurisdiction is proper, the Supreme Court created a four-part test. To assert federal jurisdiction, the removing party must establish that a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013). Where all four requirements are satisfied, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable,* 545 U.S. at 313–14).

Causes of actions relating to patent laws will not provide a federal district court jurisdiction unless patent law is a necessary element of the claims in the complaint. *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.,* 600 F.3d 1347, 1354 (Fed. Cir. 2010)

("[T]he district court ha[s] jurisdiction only if plaintiffs' 'right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims.'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988))).

In determining whether a question of substantial patent is a necessary element, a court must only consider "what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defense which it is thought the defendant may interpose." *Christianson*, 486 U.S. at 809 (internal citations omitted); *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998) ("[A]n anticipated or even inevitable federal defense generally will not support removal based upon federal question jurisdiction." (citing *Caterpillar*, 482 U.S. at 392–93)). Even if the only genuine question at issue is a federal patent-law defense, that alone is insufficient to grant federal courts jurisdiction. *Id.* (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1 (1983)); *see also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) ("[T]o meet their burden, the defendants must show that the plaintiffs' complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction.").

The Supreme Court further tightened the rule in *Christianson*:

Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which a resolution of a patent-law question is essential. If on the face of a well-pleaded complaint there are reasons completely unrelated to the provisions and purposes of the patent laws why the plaintiff may or may not be entitled to the relief it seeks, then the claim does not "arise under" those laws.

9

486 U.S. at 810.

Inventorship is one of the facets of patents that patent law is designed to protect. *HIF Bio*, 600 F.3d at 1354. So when a plaintiff's only theory of relief depends upon a determination of a patent's true inventor, inventorship is essential to the claim and federal jurisdiction is thus proper under § 1338. *Id.* at 1353; *see Christianson*, 486 U.S. at 809 ("Linguistic consistency . . . demands that § 1338(a) jurisdiction . . . extend only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."); *cf. Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004) (holding that a claim for relief that asks the court to correct inventorship is a permissible federal cause of action under 35 U.S.C. § 256). On the other hand, when an inventorship dispute is neither raised in the complaint nor necessary to adjudicate the claims, even if it is invoked as a defense, the claim does *not* arise under patent law. *See, e.g., Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 334 (5th Cir. 2014).

### B. The Complaint Does Not Assert Claims That "Arise Under" Patent Law.

#### 1. The Complaint Does Not Necessarily Raise a Disputed and Substantial Question.

A question of patent law must be "an essential element of a state law claim for federal jurisdiction under § 1338(a)." *TransCardiac Therapeutics, Inc. v. Yoganathan*,

10

15 F. Supp. 3d 1364, 1371 (N.D. Ga. 2014) (citing *Gunn*, 568 U.S. at 258). "State law claims which necessarily require resolution of the inventorship of a patent or patent application may support federal jurisdiction under § 1338(a)." *TransCardiac*, 15 F. Supp. 3d at 1370. (citing *HIF Bio*, 600 F.3d at 1353). But "[t]he appearance of 'an alternative, non-patent theory' which may entitle the plaintiffs to their requested relief compels the conclusion that the cause of action does not arise under the patent laws." *Id.* (quoting *HIF Bio*, 600 F.3d at 1354).

Consequently the first question to address here is whether the Cetindag's "hypothetical claim necessarily raise[s] a stated patent law issue that is actually disputed and substantial." *Lab'y Corp. of Am. Holdings v. Metabolite Lab'ys, Inc.*, 599 F.3d 1277, 1282 (Fed. Cir. 2010). If a substantial question is necessarily raised, "the Court looks to the Plaintiff's Complaint to see if the claims themselves present a tangible inventorship dispute." *TransCardiac*, 15 F. Supp. 3d at 1373. An actual dispute is not present if "litigation of Plaintiff's claim would not affect any party's patent rights." *Id.* at 1374.

This Complaint does not necessarily raise a genuine inventorship dispute. Renco World stipulated as much by referring to him as inventor of the '800 and '52 patents. Neither Cetindag's claims in the Complaint or Renco World's defenses are challenging his role as inventor of those patents. Instead, Cetindag claims to be one of three shareholders in Renco World, to which he transferred his rights to his inventions, a claim that Defendants also do not dispute. But brings suit as a shareholder in Renco World, not an inventor. As a shareholder, he seeks relief for

11

injuries sustained through Defendants' alleged misrepresentations and concealment of information, alleged conspiracy to take secretive action with the goal of stripping him from well-earned profits, and alleged self-dealing.[4] Although Plaintiff states several times that he is the inventor of several patents recognized by the USPTO as assigned to Renco World, [D.E. 1 at ¶¶ 30, 31, 45, 56], which he argues is an undisputed fact and is reflected on the patent documents, a court decision does not necessarily depend on inventorship. Cetindag's claims depend on whether 1) Cetindag is a shareholder in Renco World; 2) whether Renco World held ownership rights over these patents; 3) whether those rights were transferred; and 4) if

---

[4] Specifically the elements of Cetindag's claims are:

Count I & II (Fraudulent Concealment against Thomas P. Murphy, Jr. and Fraudulent Concealment against Engin Yesil): "(i) the defendant concealed or failed to disclose a material fact; (ii) the defendant knew or should have known the material fact should be disclosed; (iii) the defendant knew its concealment of or failure to disclose the material fact would induce the plaintiff to act; (iv) the defendant had a duty to disclose; and (v) the plaintiff detrimentally relied on the concealed information." *Phillip Morris USA Inc. v. Principe*, 337 So. 3d 821, 827 n7 (Fla. Dist. Ct. App. 2021) (citing *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010)).

Count III (Conspiracy against Thomas P. Murphy, Jr., Engin Yesil, Renco World Corporation, Renco USA, Inc., Coastal Construction Group of South Florida, Inc.): "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137 (Fla. Dist. Ct. App. 2006) (citing *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993)).

Count IV (Breach of Fiduciary Duty against Engin Yesil): A well pled breach of fiduciary duty claim shows that the defendant's breach of an existing duty proximately caused the plaintiff's injury for which he seeks relief. *Gracey v. Eaker*, 837 So. 2d 348, 354 (Fla. 2002).

12

transferred, whether the defendants breached fiduciary duties to Renco World and Cetindag and committed a conspiracy to deprive Cetindag, the only shareholder in Renco World who is not a shareholder in Renco USA or Coastal, of his duly-owed profits. None of those claims depend on a question of inventorship per se.

To the extent that inventorship is a question of fact in this case, it does not necessarily require answering a question of federal law. The claim's interest in patents is limited to those few patents Plaintiff pleads Murphy and Yesil transferred out of Renco World. Those patents exist. Cetindag claims undisputed inventorship of the '800 and '052 patents, which are attached to his Complaint.[5] While he pleads that Renco USA claims inventorship of the patents of which he is concerned, his claims are not dependent on a taking on that issue.[6] Even more, he can rely on the presumption of validity afforded to patents issued in the USPTO database that the information stated in the patent is correct. *TransCardiac*, 15 F. Supp. 3d at 1372. As Cetindag has already produced the patents, a court can readily determine that Cetindag is the inventor of patented designs transferred and assigned to Renco World. [D.E. 1 at 25, 56]. That information is readily cross-referenced against the

---

[5] Moreover, the patent produced is corroborated by the patent information stored in the USPTO's publicly accessible database. https://www.uspto.gov/patents/search/patent-public-search.

[6] Although Defendants argue that Plaintiff is only the "alleged" inventor, [D.E. 20 at 2, 3, 6], Defendants do not otherwise make a serious argument that there is a necessary dispute over inventorship, nor is a determination on that question necessary to adjudicate the claims. So while the dispute may be actual, it is not necessary.

publicly accessible USPTO patent database.[7] Inventorship is thus is not necessarily raised in this Complaint to generate federal question jurisdiction.

To be sure, Defendants are raising a defense that those patented designs had nothing to do with the products marketed by Renco USA. Defendants are claiming that the predicate of all the claims here is missing; Cetindag's inventions and whether or not they are being practiced. And that at its heart a patent dispute. As we address next, however, there is no substantial issue of federal law in the disposition of that defense.

### 2.  *Substantial Issue*

To determine whether there is a substantial issue, *Gunn* requires courts to evaluate "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The fact that a Complaint alleges torts that touch upon a patent or patent application does not create a substantial issue of patent law if the plaintiff can satisfy his burden without the court resolving a substantial issue of patent law. *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1280 (Fed. Cir. 2001); *Gonzalez-Hernandez v. Orbay*, No. 08-21782-CIV, 2009 WL 10668626, at *5 (S.D. Fla. Jan. 15, 2009) (finding, despite allegations dispersed through the complaint that Plaintiff invented the patent in issue, the claims did not "arise under" federal law because proving a question of inventorship was not essential to recovery); *see also Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (finding that when a patent is merely

---

[7] According to the USPTO database, Renco USA is neither the inventor nor assignee of any patents—that is publicly available material that Defendants have not disputed.

the subject of a contract dispute, a substantial question arising under patent law is not necessarily invoked).

The Eleventh Circuit has identified three factors that heighten the probability that a Complaint requires resolution of substantial federal issue: whether a pure question of law is invoked by the complaint, if answering a question will have a controlling effect on many other cases, or if the federal government has a strong interest in litigating in federal court. *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (citations omitted); *see NeuroRepair, Inc. v. Nath L. Grp.*, 781 F.3d 1340 (Fed. Cir. 2015) (adopting the factors); *Inspired Dev. Grp., LLC v. Inspired Prods. Grp.*, LLC, 938 F.3d 1355 (Fed. Cir. 2019) (adopting the factors); *see also Forrester Env't Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329 (Fed. Cir. 2013) (finding that when a collateral estoppel arising from a state law case would only affect the parties and patents in the suit before the state court in that case, federal law is not substantially invoked).

To begin with the third factor first, the federal government does not have a strong interest in the case. Although the federal government does have an interest in ensuring that only those with rights to U.S. government issued patents practice and benefit from them, 28 U.S.C. § 1338(a), it does not have a stronger interest than Florida in deterring intra-corporate malfeasance completed wholly within Florida. The case at hand is one about conspiracy, self-dealing, and concealment of facts to the detriment of a shareholder. The fact that Cetindag also claims to be the inventor of the patents, which as we have already noted, is factually supported by the publicly

15

accessible patents held by Renco World that he invokes in the Complaint, merely provides context into facts such as his relationship with the individual Defendants, why he is a 40% shareholder in a U.S. company despite living in Turkey, his connection to the Renco name, and why he was allegedly contacted by a Kentucky business person inquiring about using the patented technology.

Turning to the second factor, a decision, favorably or unfavorably, would not have a controlling decision on any federal issues. If Cetindag succeeds on any or all claims, whether it be in federal or state court, the derivative implications are equal—the case does not ask the court to explore novel issues or rule contrary to existing federal cases. The case is heavily fact-bound and would not control future patent claims. *See Inspired Development Group, LLC*, 938 F.3d at 1364–65 (finding that the second factor is only implicated if the suit under analysis would control future federal issues).

Finally, the complaint does not invoke a pure question of law. Cetindag asserts state law claims with elements wholly distinct from federal law. The Court does not need to interpret a whole or novel issue unsettled in law, nor will a judgment at trial affect any party's patent-derived rights. Rather, the case must look to the facts, and ask whether the facts satisfy the elements of much-litigated cases. And his claims do not require a finding that Renco USA is infringing the '800 or '052 patents. Cetindag can still recover damages from a breach of fiduciary duty if even a small part of his inventions or designs contributed to Renco USA's own patents, or otherwise if the jury determines that the pursuit of alternative patents without his knowledge was

16

itself a breach of fiduciary duties owed to a shareholder. In other words, Cetindag could if he desired pursue a literal infringement claim, or choose instead to not raise that claim because he does not have to. That may make his claim harder to prove, of course, but that is a strategy he is entitled to pursue. See *Caterpillar,* 482 U.S. at 392 (the plaintiff is "the master of his complaint" and can choose to pursue federal or state jurisdiction).

Defendants' counter-arguments are not persuasive. They insist that the case raises a substantial issue in that as pleaded, "determination of ownership (through inventorship) and infringement *must* be made for Plaintiff to recover on Counts I and III of the Complaint." Inventorship is readily determinable by simply reviewing the existing patents provided to the Court in the Complaint and cross-referencing them against the publicly available database, which Cetindag does not contest. Likewise, he does not plead that Renco USA is not the lawful assignee; instead, he pleads that certain Defendants breached their fiduciary duties as shareholders of Renco World when they allegedly concealed facts regarding the patent's approval and its transfer, and that there was a conspiracy amongst the defendants to commit the transfer, even if legal on its face, solely to engage in self-dealing to the detriment of the Plaintiff. The Complaint carefully avoids alleging that the use of the patent technology was itself unlawful.

Indeed Counts I and III could succeed under several theories without a state Court intervening on the questions of inventorship or practice. Count I alleges that Defendants concealed the 2015 approval of the '052 patent, final approval to use the

17

patented technology in construction projects, the transfer of the patented technology to Renco USA, and the profits derived from the patented technology. None require answering a question of ownership or inventorship per se. The patents were clearly approved, so the question of whether the approvals were concealed is a question of fact that decides whether fiduciary duties under corporate law, not patent law, were violated. While there must be an inquiry into whether the patents were used to decide whether certain profits derived, a final judgment does not require an inquiry into whether they were wrongly used.

Defendants still insist that proving these claims requires a *Markman* construction and an infringement comparison. It does not. Cetindag does not allege that anyone infringed a patent or that the assignment was unlawful; he alleges that fellow shareholders concealed the patents' approval and quietly moved their value out of Renco World. Whether the patented technology was used in some respects is a fact a factfinder can take from Defendants' own records and public filings; whether its use actually infringed in violation of federal is a question this case never asks. That is the difference between using a patent as evidence and litigating it as a claim.

The same logic applies to whether there was concealment of the alleged transfer. If Defendants dispute that the patented technology was transferred, they need only provide proof by a preponderance of the evidence that no such transfer occurred. They could, for example, provide evidence of patents other than the '052 and '800 patents that Defendants used or invented. If they would rather concede that the transfer occurred and Defendants are in fact using the patented technology,

18

Defendants could additionally provide evidence that casts doubt on the concealment allegation.

Count III ("the Conspiracy Claim") fares no better for Defendants. The Conspiracy Claim pleads that the Defendants agreed to hide certain material information about Renco World Patent applications and approvals from a 40% shareholder and, while withholding such information, secretly transferred the patent's use rights out of Renco World. [D.E. 1 at ¶¶, 64–69]. A court will not need to make conclusion about inventorship or patent practice to answer this case—only whether there was an agreement to defraud a Renco World Shareholder, to Renco World's own harm, and action taken in furtherance of the agreement. *See Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 933 (Fed. Cir. 2020) (finding that a trade secret claim that did not "necessarily depend" on solving a substantial question of patent failed the *Gunn* test).[8]

### 3.  *Federal-State Balance*

The federal-state balance is frustrated when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005) (internal quotation marks omitted) (quoting *Aronson v. Quick Point Pencil Co.*, 440

---

[8] Defendants add that the patents descend from a Patent Cooperation Treaty filing, so the case will require construing the treaty and 35 U.S.C. § 371. But nothing in Plaintiff's claims turns on how the patents were prosecuted; their validity is presumed and uncontested. A treaty pathway that produced a presumptively valid patent supplies background and context, not a federal element. The Treaty argument therefore adds nothing the substantiality analysis has not already resolved.

U.S. 257, 262 (1979)). For example, state tort liability is preempted when questions about the patent securitization process (i.e., whether a patent was obtained through fraud) are necessary to adjudicate the state tort claims. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318 (Fed. Cir. 1998) (providing examples), *overruled on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). The Federal Circuit also finds questions of per se patent misuse preemptory. *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997).

The situations in which federal patent law tends to preempt state tort law claims are of a different kind. They tend to either involve a patent holder accusing a person or entity of infringing on the patent or a person claiming to hold patent rights that another fraudulent holds. Cetindag here is not claiming rights as a patent holder or claiming another fraudulently obtained the patent. Rather, the essence of his claims come from his position as a shareholder in Renco World, and he accuses his fellow shareholders, who are also shareholders in other businesses that Cetindag does not have an ownership stake in (and are Defendants), of violating corporate dealings and engaging in self-dealing. As such, the claims are fully suitable for judgment in state court.

### 4.  *The Grable Factors Yield No Federal Jurisdiction*

When all the relevant *Grable/Gunn* factors are fully assessed, it is apparent that this is not the type of "special" category of case that gives rise to federal jurisdiction over purely state law claims. Indeed, the case for federal jurisdiction here

20

is far less compelling than the arguments raised in the Supreme Court in *Empire Healthcare* that were deemed insufficient in that case. There an insurance carrier, that administered a health plan for federal employees under the Federal Employees Health Benefits Act, sued a former plan beneficiary for reimbursement of claims previously paid once the plan beneficiary recovered damages from a third party in the settlement of a suit relating to those claims. The *Empire Healthchoice* opinion explained that the *Grable* test carves a "special and small category" of cases out of state court jurisdiction over state-law claims, 547 U.S. at 699, which did not apply to a state law contract dispute where the federal issue was not dispositive of the case, and the reimbursement claim was "fact-bound and situation-specific." *Id.* at 700-01.

Following that reasoning, the Eleventh Circuit in a 2008 case found that a state law negligence and defamation case did not trigger federal jurisdiction even though the underlying controversy at the heart of the claims involved the question whether the plaintiff in that case had violated federal gun laws. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296-99 (11th Cir. 2008). The publishing house defendant in that case argued that application of the first amendment and federal weapons statutes was central to the case and warranted federal question jurisdiction, but the court rejected that argument and held that the district court's denial of a motion to remand was erroneous because no federal subject matter jurisdiction was present:

> In our view, the plaintiffs' defamation claims do not raise a substantial issue of federal law. The dispute between the parties concerns the factual basis for the defendants' statements accusing the plaintiffs of violating federal law. Clear federal guidance exists on every question of

21

> federal law relevant to evaluating the falsity of those statements. . . . While this case does raise an important federal issue, the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable.*

*Id.* at 1301-02.

That analysis squarely applies here. The patent law issues in the case are clearly ancillary to the core fact-laden dispute that underlies the conspiracy, fraudulent concealment, and breach of fiduciary claims in the case. Even if some element or explanation of patent law may be presented to the jury, the fact question here has no bearing on patent law, nor is it dependent on a finding of patent infringement or invalidity concerns. The federal issue here is thus not substantial and not dispositive of the case, so this action undoubtedly does not fall within the "special and small" category of cases that *Empire Healthchoice* envisioned. *See also id.* at 1301 (citing with approval *Singh v. Duane Morris LLP,* 538 F.3d 334, 339 (5th Cir. 2008) (federal jurisdiction not triggered where "federal issue [did not require] resolution of an important question of law" but was "predominantly one of fact" in legal malpractice action over trademark claim), and *Bennett v. Sw. Airlines Co.,* 484 F.3d 907, 910 (7th Cir. 2007) (no federal jurisdiction over state law tort claims in aviation accident, implicating FAA regulations, but that involved "fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.")).

Also, consider the consequences if we are wrong on this point. As the analysis shows above, the debate here really is not that close. But say it was, and we opted to

22

accept Defendants' view of federal question jurisdiction and found that, because patent law was relevant in the case based on their defenses, we should proceed with the action and deny remand. The Court and parties could endure very expensive and time-consuming litigation, resulting in possibly a lengthy trial. And then all this effort would only be met with a Federal Circuit appeal that held that all that time and effort was wasted due to lack of federal subject matter jurisdiction. That is precisely what happened in a 2015 case, *NeuroRepair, Inc. v. The Nath Law Group*, 781 F.3d 1340 (Fed. Cir. 2015). There an action was removed to federal court by patent lawyers who were sued for negligence and breach of fiduciary duty claims, in a suit filed by former clients who claimed that the lawyers had negligently prosecuted their patentable ideas before the USPTO. *Id.* at 1342-43. After removal, the federal case proceeded to final judgment in favor of the defendant lawyers. On appeal, however, the Federal Circuit vacated the judgment in its entirety because federal subject matter jurisdiction never existed in the first place, even though patent law and patent prosecution regulations were at the core of the malpractice case:

> Although resolution of these assertions could involve the application of substantive patent law principles, it is not clear from the record that any particular substantive patent law issue or issues would need to be resolved. Both claim scope and timing of issuance are likely to depend primarily on the particular facts and circumstances of the prior art, timely responses to office actions, etc., rather than on the interpretation of federal law. This is therefore unlike cases where a distinct issue of federal law was dispositive of the case.

*Id.* at 1346.

That settles it, doesn't it? If this *NeuroRepair* case does not trigger federal question jurisdiction, how could this ownership dispute ever rise to that level? The

23

arguments for federal question jurisdiction are far more compelling when a state malpractice suit revolves entirely around patent law and patent regulations. But the Federal Circuit found in those circumstances that the *Grable/Gunn* factors were still not satisfied. This teaches us that a tort does not become a patent case just because its subject happens to involve a patent. If it did, every shareholder-derivative suit, every royalty dispute, and every fiduciary claim touching a company's inventions or federally protected intellectual property would belong in federal court. *Gunn* forecloses that result. The Federal Circuit agrees. That is enough for us.

### III.   CONCLUSION

This case sits on the state side of a deliberate line. *Gunn* preserves Congress's decision to send pure patent disputes to federal court while leaving the law of fraud, fiduciary duty, and corporate self-dealing to the States absent diversity jurisdiction. As a result, Plaintiff's Motion for Remand is **GRANTED** and the case remanded to the Circuit Court for the Eleventh Judicial Circuit.

The Court will stay this Order, however, for fourteen days in the event that any party seeks to appeal this non-dispositive Order to the District Judge under Rule 4, S.D. Fla. Local Atty. R., and Fed. R. Civ. P. 72.  There is clear authority that a motion to remand is not a dispositive motion under 28 U.S.C. § 636, but in an abundance of caution the Court will direct that no remand take place until the time for appeal has passed. The Clerk shall thus *not* remand the action until this stay period has elapsed.  If no appeal is filed within that time period, the Clerk will be directed to remand the action to the Eleventh Judicial Circuit.

**DONE and ORDERED** in Chambers at Miami, Florida this 30th day of June, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge